Opinion filed May 26, 2022



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00275-CV

_____

## IN THE INTEREST OF Z.O., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10026-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of Z.O.'s mother and father. The mother filed this appeal. On appeal, she presents one issue in which she challenges the jury's finding that termination of her parental rights is in the best interest of Z.O. We affirm the order of the trial court.

### I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has

committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court terminated Appellant's rights in accordance with the findings made by the jury. After being instructed pursuant to Section 161.001(b), the jury answered the questions posed in the trial court's charge to the jury. The jury found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). *See id.* Appellant does not challenge these findings on appeal.

The jury also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child. *See id.* § 161.001(b)(2). In her sole issue on appeal, Appellant challenges the sufficiency of the evidence to support the best interest finding.

Appellant asks that we apply a de novo standard of review when considering her issue. We decline to do so and, instead, apply the following standards of review set forth by the Texas Supreme Court. To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the jury, as the factfinder in this case, is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).

But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence and Analysis*

Numerous witnesses testified during the four-day jury trial, and much of the testimony was repetitive. The record shows that the Department of Family and Protective Services first became involved with Appellant in 2018, when it received a report that Appellant, while caring for her one-year-old child L.Y., was under the influence of Xanax and marihuana. The intake indicated that Appellant was asleep midday while L.Y. was crawling around the house unattended. Both Appellant and L.Y. tested positive for marihuana. The investigation revealed concerns of drug use by Appellant while caring for L.Y., unstable housing, and other people that were in and out of the home. The Department did not proceed beyond the initial stages of its case involving Appellant and L.Y. because Appellant voluntarily gave custody of L.Y. to Appellant's mother, Christina.

Approximately sixteen months later, the Department conducted another investigation into Appellant. This investigation involved allegations similar to those

in 2018, but the child involved in the 2020 investigation was Appellant's newborn son, Z.O. The initial allegations involved Appellant's use of marihuana while pregnant with Z.O., but the Department's investigation again revealed concerns of people in and out of the residence, drug use, and unstable housing. The case was referred for family-based safety services, but Z.O. was allowed to remain with Appellant. Appellant, however, did not engage in these services, particularly the requirement that she submit to random drug testing.

A few months later, when Z.O. was three and one-half months old, Z.O. tested positive for marihuana and cocaine on a hair follicle test. Not only did Appellant admit that she had used marihuana while pregnant with Z.O., she also admitted that she and her girlfriend continued to smoke marihuana after Z.O. was born. Appellant tested positive for marihuana, but not cocaine, and said that she was not sure how Z.O. had been exposed to cocaine. Appellant's girlfriend, however, tested positive for cocaine. After the results of these drug tests were received, the Department removed Z.O. from Appellant's care and placed him in a foster home.

At that point, the Department passed many of its responsibilities in this case to a nonprofit called 2INgage, with whom the Department contracted to provide services to families whose children had been placed in foster care. In July 2020, Appellant stated that she had learned her lesson and would not be returning to drug use. By November 2020, 2INgage was preparing to return Z.O. to Appellant for a monitored return because Appellant had been testing negative on drug tests and had otherwise partially complied with the services required by her family service plan. But in November 2020, Appellant tested positive for marihuana and had a roommate about whom she had not previously informed 2INgage. During the November home visit, Appellant would not permit the 2INgage case manager to open a bedroom door and would not tell the caseworker the name of the new roommate. In December 2020, Appellant tested positive for marihuana again and "sounded out of

4

it" when she spoke to her 2INgage case manager on the phone. Thus, the monitored return was derailed.

Throughout the time that the Department and 2INgage were involved with Appellant, there were major concerns about the instability of Appellant's employment and housing. There were also concerns about her use of marihuana while on community supervision, which violated the terms and conditions of her community supervision. In August 2019, after violating the terms of her deferred-adjudication community supervision, Appellant was adjudicated guilty of the state jail felony offense of fraudulent use or possession of identifying information. At that time, a court assessed her punishment at confinement for two years in a state jail facility, but it suspended the imposition of that sentence and placed Appellant on community supervision for five years. Appellant, after the second day of trial had recessed in this termination proceeding, pled guilty to felony theft, an offense that she had committed while she was on deferred-adjudication community supervision. Appellant was also placed on community supervision for five years for her theft conviction.

Despite Appellant's shortcomings, Appellant consistently went to visitation as scheduled. Her visits with Z.O. were appropriate and were described as "extremely positive" and "sweet." Additionally, by the time of trial, Appellant seemed to be a bit more stable and to have a better plan for her life. She acknowledged her past mistakes, but she testified that she had changed and that she was sober. Appellant and some of her family members testified that she had made great strides and that it would not be in Z.O.'s best interest for Appellant's parental rights to be terminated. Christina had even returned custody of L.Y. to Appellant a few months prior to the trial regarding Z.O.

However, less than three weeks before the termination hearing commenced, the 2INgage case manager smelled marihuana while standing on Appellant's front

porch. Appellant did not come to the door, but the case manager, who recognized Appellant's voice, heard Appellant yelling at someone (presumably L.Y.) to "shut the F up."

By all accounts, Z.O. was loved by and had bonded with his foster family and Appellant. The 2Ingage case manager observed, however, that Z.O. did not want to go with Appellant at visitation exchanges between Appellant and Z.O.'s foster mother: he cried and tried to stay with his foster mother. The foster mother testified to this as well. Z.O. had been placed with the same foster parents since the day he was removed from Appellant's care. Z.O. had become part of their family, and if he were to become available for adoption, the foster parents would like to adopt him. The foster parents provided a safe and stable home for Z.O., and they believed that it would be in Z.O.'s best interest for Appellant's parental rights to be terminated. Z.O.'s attorney and guardian ad litem did not recommend that Z.O. be returned to Appellant.

The factfinder at trial is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. As an appellate court, we are not at liberty to disturb the factfinder's determinations as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Giving due deference to the jury and the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trier of fact here could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of Z.O. *See Holley*, 544 S.W.2d at 371–72. We note that, by most accounts, Appellant had made recent strides to overcome her marihuana addiction, to obtain housing and employment, to be responsible, and to be a good mother to L.Y. and Z.O. However, Appellant's recent strides do not necessarily overcome the probative value of her past history of drug use and irresponsible choices. *See In re J.F.-G.*, 627 S.W.3d 304, 316–17 (Tex. 2021); *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Pursuant to both *J.F.-G.* and

*J.O.A.*, we hold that the jury in this case was free to judge the credibility of the witnesses and to determine, as the attorney and guardian ad litem suggested, that Appellant had only "cleaned up" temporarily for trial.

Upon considering the record as it relates to the desires of the child (who in this case was too young to express his desires), the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of those involved, the plans for the child by the Department, Appellant's criminal history, Appellant's conduct while the case was pending below, Appellant's failure to abstain from the use of marihuana, and the instability of Appellant's situation, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of Z.O. *See Holley*, 544 S.W.2d at 371–72. Deferring, as we must, to the jury's and the trial court's finding as to a child's best interest, we cannot hold in this case that the finding as to Z.O.'s best interest is not supported by clear and convincing evidence. *See J.F.-G.*, 627 S.W.3d at 316–17; *C.H.*, 89 S.W.3d at 27. Accordingly, we overrule Appellant's sole issue.

### III. *This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS
JUSTICE

May 26, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

7